**Ed ALLEN and Wife, Judy Allen, Appellants,**

**v.**

**Danny DEVINE and Wife, Lisa Devine; Krystal Van Cleave; Jason Van Cleave; Kevin Hightower; Burt Wilkinson; Jackie Sanders; and Austin**

**Van Cleave and Shayann Hightower,[1]
The Children, Appellees.**

No. 2003–CA–002141–ME.

Court of Appeals of Kentucky.

Feb. 4, 2005.

Rehearing Denied April 8, 2005.

Discretionary Review Denied by
Supreme Court Dec. 14, 2005.

---

1. We note that in some of the exhibits before the trial court the child's name is spelled as "Shiann".

Kenneth R. Williams, Jr., Russellville, KY, for appellant.

Pamela C. Bratcher, Bowling Green, KY, for appellee.

Before COMBS, Chief Judge, JOHNSON and MINTON, Judges.

*OPINION*

JOHNSON, Judge.

Ed Allen and his wife, Judy Allen, have appealed from the September 8, 2003, order of the Logan Circuit Court which denied their motion to dismiss the petition for immediate custody filed by Danny Devine and his wife, Lisa Devine, for lack of standing and denied their claims to custody.[2] The Allens alleged that they had been acting as *de facto* custodians of Austin Van Cleave and Shayann Hightower, the minor children of Krystal Van Cleave, and requested, in the alternative, that they be awarded permanent custody of the children. The Allens do not dispute the trial court's findings, but rather its application of the law regarding *de facto* custodianship. Having concluded that the trial court failed to apply the correct law in making its determination, we vacate the order and remand this matter for further proceedings consistent with this Opinion.

Krystal Van Cleave is the mother of Austin Van Cleave, whose date of birth is June 23, 2000, and Shayann Hightower, whose date of birth is December 5, 2001.[3] Austin's father is Burt Wilkinson. Burt and Krystal lived together from 1997 until 2000. Burt's whereabouts were unknown at the time the Devines, who are Krystal's father and stepmother, filed their petition for custody of Austin and Shayann. Since Burt was not served with the petition, his rights were not adjudicated by the trial court's award of custody to the Devines. Shayann's father is Kevin Hightower. Krystal and Kevin resided together at the

---

2. The Devines argue in their brief that because the Allens did not file a motion to alter, amend, or vacate under Kentucky Rules of Civil Procedure (CR) 59.05, they have waived their right on appeal to argue this issue. We find no merit in this argument.

3. In 1996 Krystal married Jason Van Cleave. The marriage produced one child, Ayla Van Cleave. Although Jason is named as a party to this appeal, no claim for custody of Ayla is made in this case. Ayla has resided since birth with Krystal's mother, Darlene Kisselbaugh, who serves as Ayla's *de facto* custodian. Krystal and Jason are now divorced.

time this matter was before the trial court, but they are not married. Following the trial court's award of custody to the Devines, Krystal and Kevin were granted visitation rights with Austin and Shayann "coextensive" with the Allens.

Shortly after Austin's birth in 2000, Krystal and Burt met Ed and Judy Allen, who reside in Logan County and rented a house to Krystal and Burt.[4] Beginning in February 2002, the Allens began keeping both Austin and Shayann in their home on a regular basis. At that time, Austin was 20 months old and Shayann was two months old. By April 2002 the children were residing full-time with the Allens.[5] Krystal testified that this was not to be a permanent arrangement, but that at that time, she could not take care of the children.[6] Krystal visited the children at the Allens' home once or twice weekly and Kevin visited the children once every other week.[7] During the time the children resided with the Allens, the Allens provided for essentially all of the children's needs, although Krystal and Kevin contributed WIC payments when available, placed approximately $30.00 in a piggybank, and bought a few clothes for the children.[8]

The Devines also bought the children some clothes.

Between February and September 2002, the Devines visited with the two children once or twice monthly. They claimed they did not know the children were residing with the Allens on a full-time basis until Labor Day 2002 because Krystal had intentionally hid this from them. At that time, the Devines began to exercise a more consistent visitation schedule with the children and often picked up the children from the Allens' residence for overnight visitations.

In June 2002 Jackie Sanders, Kevin's mother and the paternal grandmother of Shayann, filed an action against Krystal and Kevin seeking visitation rights with Shayann. Krystal had told Jackie that the children were residing with Krystal's "cousin Judy." It was later determined, and is currently undisputed, that the Allens are of no blood relation to Krystal. As a result of the court action being filed, Krystal attempted to retrieve the children from the Allens' home. However, the Allens refused to relinquish custody of the children to Krystal. The Allens made oral and written agreements with Krystal and Kevin which stated that if Krystal and

4. The Allens were in their mid–50's at this time, had been married for over 30 years, and operated a small printing business in Logan County.

5. Prior to this time, Krystal had left Austin with her cousin for almost nine months before taking action through the Sheriff's office to get him back.

6. Krystal was diagnosed in 1996 with bipolar disorder, but she has failed to take medication for this condition. Both Krystal and Kevin have a history of alcohol and drug abuse, but Krystal testified that neither had current substance abuse problems.

7. Krystal testified that in August 2003 she attempted to get the children back from the

Allens, but they allegedly refused. Krystal did not consult an attorney regarding this matter until December 2003, and she took no legal action to remove the children from the Allens' care.

8. Before and during the custody action, Krystal was unemployed, and only a few months prior to this action, Kevin began to work through a temporary service for $7.00 per hour. At the time of the final hearing on January 20, 2004, Krystal had been working 40–hour weeks for approximately one month as a customer service representative earning $7.50 per hour and Kevin was doing construction work for $8.25 per hour. Krystal testified that she had attempted to contribute additional money to the care of the two children, but the Allens had refused.

Kevin would provide a secure and stable environment for the children, the Allens would return the children to them. In the meantime, on November 12, 2002, Jackie was granted visitation with Shayann. The trial court at that time ordered Krystal to get a job and to take any necessary steps to get the children back into her household within six months.

In March 2003 Krystal met with her father, Danny Devine, at his request and she agreed that the Devines should seek temporary custody of the children.[9] On May 1, 2003, the Devines filed a verified petition for immediate and permanent custody and emergency hearing, stating as follows:

> Krystal Van Cleave and Kevin Hightower, the father of Shayann Hightower, have allowed the [appellants] Judy Allen and Ed Allen, who are not related to the children, to take physical custody of the children. Krystal Van Cleave and Kevin Hightower have admitted that they are unable to care for the children.
>
> The [Devines] have been visiting with the children every other weekend since they realized Judy Allen and Ed Allen had physical custody of the children. As Mr. and Mrs. Allen are not related to the children, it would be in the children's best interest for the [Devines], the children's maternal grandparents, to have custody of them.

The Devines' motion did not allege that the Allens were unfit to care for the chil-dren, only that they were not related to the children. The Allens filed a response on May 22, 2003, wherein they denied that Krystal and Kevin had allowed them "to take physical custody of the children." The Allens requested that the Devines' motion be dismissed for lack of standing or, in the alternative, they be awarded custody of the children as their *de facto* custodians.[10]

On June 1, 2003, the Devines filed a motion for grandparent visitation pending a ruling on their custody petition. Following a brief hearing on June 27, 2003, the Logan Circuit Court Domestic Relations Commissioner recused himself from the case because he represented the Allens' son in an unrelated criminal matter. In a report filed on June 27, 2003, the DRC recommended that each of the parties submit to a home evaluation and then transferred the case directly to the Logan Circuit Court pending the outcome of the home evaluations.

On June 17, 2003, the Devines filed an amended petition solely for the purpose of joining Burt Wilkinson as a party to the case. They also filed a motion to consolidate the case at issue herein with the visitation action filed in 2002 by Jackie Sanders, stating that the two cases "overlap and concern the same child." On July 22, 2003, the trial court entered an order (1) denying the Devines' motion to consolidate; (2) ordering the appointment of a Guardian Ad Litem for the minor children;

9. However, at the hearing in July 2003, Krystal wanted the Allens to keep the children with the Devines having visitation. The trial court found that Krystal took her parents' divorce very hard and had not had a good relationship with her father for many years. The trial court further observed Krystal's anger when she testified, which appeared to be primarily directed at her father. After the July 2003 hearing, Krystal once again wanted her father to keep the children, but then changed her mind again before the evidentia-ry hearings in August 2003. By the last hearing she wanted to take them herself.

10. There is disputed testimony as to whether the Allens ever suggested to the Devines that they take the children to raise, whether the Allens admitted they were too old to care for the children, and whether the Allens agreed not to seek *de facto* custodian status as to the children.

(3) granting the Devines' motion for visitation with the minor children every other weekend pending the outcome of the final hearing; (4) ordering the Cabinet for Families and Children to "conduct investigations and prepare a final report to be submitted to the Court on or before August 21, 2003," the date of the final hearing; and (5) ordering all parties to attend parenting education classes.[11]

Evidentiary hearings were held on August 21, 2003, August 26, 2003, and August 28, 2003. In its order entered on September 8, 2003, the trial court made the following findings:

Krystal Van Cleave and Kevin Hightower have, for reasons other than poverty alone, failed to provide for the welfare of their children and have knowingly and voluntarily delegated the custody and control of their children to the Allens for nearly a year and a half. The Court concludes that they have lost their superior right to custody and that custody should be determined between the parents and the non-parent contestants based upon the best interest of the children and considering all relevant facts.

Based upon the facts, the Court concludes that it is now in the best interest of the children that permanent custody be awarded to Danny and Lisa Devine. The only caveat to this conclusion is the theoretical possibility that the shock of these proceedings may cause Krystal and Kevin to discover some previously unknown penchant for parental responsibility and self sacrifice. For this reason, only temporary custody is now granted to the Devines and another hearing should be scheduled to finally determine if this unlikely event can occur.

The effect of this order is to eliminate Ed and Judy Allen from contention as permanent custodians. It is in the best interest of the children that the Allens be granted temporary visitation rights coextensive with the visitation rights of Krystal and Kevin [ ] which shall be conducted in accordance with the visitation guidelines contained in the local rules.

The claims of the Allens to custody of the children are denied.[12]

The Allens filed their notice of appeal on October 8, 2003.[13]

On January 20, 2004, a final hearing was held in which the permanent custody of Austin was determined as between the Devines and Krystal and the permanent custody of Shayann was determined as between the Devines, Krystal and Kevin. The trial court entered an order on February 17, 2004, awarding permanent custody of the two children to the Devines, with the visitation order of October 23, 2003, remaining in effect.

■ Having reviewed the record and the applicable law, we must conclude that

---

**11.** The trial court's order also denied a motion filed by the Devines on June 10, 2003, requesting that all parties execute medical records releases. The trial court determined that good cause had not been shown as to the necessity of the releases; however, it did order Krystal to execute a release for her medical records. It further ordered no discussions in front of the minor children in regard to this case.

**12.** On September 30, 2003, Krystal and Kevin filed a motion to enforce visitation stating that they had been denied visitation by the Devines and they were uncertain whether they would be allowed visitation with the children in the future. The trial court entered an amended visitation order on October 23, 2003, after the notice of appeal had been filed by the Allens.

**13.** This case was submitted for decision in August 2004 and scheduled to be heard in December 2004.

the trial court erred in this case when it found the Allens to be *de facto* custodians, but failed to give them "equal consideration" as required under KRS [14] 403.270(2) [15] when it determined custody in accordance with the best interests of the children.[16] We hold that the trial court erred in concluding that KRS 403.270, the "equal consideration" requirement, was not the applicable law and that it only applies to custody between parents, as it plainly states that it also applies to *de facto* custodians. Since the trial court's findings that the Allens were *de facto* custodians were supported by substantial evidence, the trial court was required to give the Allens "equal consideration" under KRS 403.270(2) when applying the best interests standard. Put simply, the trial court should have given Krystal, Kevin, and the Allens equal consideration, and only upon finding that all of them were unfit to have custody of the children or that all of them had relinquished their superior parental or *de facto* custodial rights should it have considered the Devines or anyone else as custodians of the children. Therefore, we must vacate the order entered on September 8, 2003, and remand this matter to the Logan Circuit Court for further proceedings to consider the Allens as custodians of Austin or Shayann pursuant to KRS 403.270(2).

In *Moore, supra* the Supreme Court of Kentucky addressed the standard of review for appellate courts in a custody case and held that a reviewing court may set aside findings of fact only if those findings are clearly erroneous; *i.e.,* whether or not those findings are supported by substantial evidence.[17]

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men."

---

**14.** Kentucky Revised Statutes.

**15.** KRS 403.270(2) states:

> The court shall determine custody in accordance with the best interests of the child and *equal consideration shall be given to each parent and to any de facto custodian* [emphasis added]. The court shall consider all relevant factors including:
> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;
> (b) The wishes of the child as to his custodian;
> (c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
> (d) The child's adjustment to his home, school, and community;
> (e) The mental and physical health of all individuals involved;
> (f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

> (g) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;
> (h) The intent of the parent or parents in placing the child with a de facto custodian; and
> (i) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined by KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school.

**16.** If the trial court had not found the Allens to be *de facto* custodians, its "best interests" analysis would have been proper once it found by *clear and convincing evidence* that Krystal and Kevin were unfit or had given up their superior parental rights. *Moore v. Asente,* 110 S.W.3d 336, 359 (Ky.2003).

**17.** *Moore,* 110 S.W.3d at 354.

... Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence [footnotes omitted].[18]

■■■ After a trial court makes the required findings, it must then apply the law to the facts. The determination of the proper law to be applied to the facts is reviewed *de novo*.[19] "The resulting custody award as determined by the trial court will not be disturbed unless it constitutes an abuse of discretion."[20] " 'Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision.'... The exercise of discretion must be legally sound."[21]

■■■ We first address whether the trial court properly found the Allens to be *de facto* custodians by clear and convincing evidence. KRS 403.270(1)(a) defines a *de facto* custodian as

> a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older.... Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the

child has resided with the person for the required minimum period.

KRS 403.270(1)(b) provides that once the court determines by clear and convincing evidence that a person meets the definition of a *de facto* custodian, "the court shall give the person the same standing in custody matters that is given to each parent under this section...."[22] The Devines argue that the Allens were not found to be the primary caregivers for and financial supporters of the children; however, this is completely contrary to the trial court's findings. The Devines further argue that Krystal's placement of the children with the Allens was a temporary agreement. However, this is irrelevant when determining whether the Allens were the children's *de facto* custodians. The Devines also state that the Allens have "unclean hands" and should not be found to be the *de facto* custodians. However, it was Krystal who hid the fact that the children were living with the Allens, not the Allens themselves. Further, the trial court made specific findings that both the Devines and the Allens might desire to have the children permanently when it stated:

> Even if they were granted custody of the children, the Allens, and initially the Devines, expressed willingness to give the children back to Krystal at any point in the future that she might request. The Court doubts the complete sincerity of these sentiments and suspects that they may have been made with the idea that Krystal would never really discover responsibility and demand custody of

---

**18.** *Id.* at 354.

**19.** *Lindley v. Paducah Bank & Trust,* 114 S.W.3d 259, 263 (Ky.App.2002).

**20.** *Sherfey v. Sherfey,* 74 S.W.3d 777, 782–83 (Ky.App.2002) (citing *Bickel v. Bickel,* 442 S.W.2d 575, 577 (Ky.1969)).

**21.** *Sherfey,* 74 S.W.3d at 783 (quoting *Kuprion v. Fitzgerald,* 888 S.W.2d 679, 684 (Ky.1994)).

**22.** *See Sherfey,* 74 S.W.3d at 777.

the children—or to appease Krystal—or for other reasons.

There is no evidence in the record to dispute the trial court's finding that the Allens were both the primary caregivers and the primary financial supporters [23] of the children for over six months prior to the Devines filing their petition and that the children were under three years of age at the time they were placed in the Allens' care.

The trial court's findings were specific as to the Allens' status as *de facto* custodians, stating:

In February of 2002, the Allens began keeping both Shayann and Austin on a regular basis in their home. According to Mr. Allen, Krystal visits the children a couple of times per week, and Kevin may visit the children every other week or so. Neither Krystal nor Kevin have had the children on an overnight basis since April of 2002. The Allens have provided essentially all of the food and clothing for the children although Krystal states that they contributed "WIC payments" when they were available and

Kevin said he had put about $30.00 in one of the children's piggy bank.

Thus, the trial court's factual findings that the Allens were *de facto* custodians of Austin and Shayann was supported by substantial evidence and we affirm.

■ Because the Allens were found to be *de facto* custodians of the children, the Devines were required to establish that Krystal, Kevin, and the Allens were either unfit or had their superior right to custody relinquished before they could have standing [24] to seek custody.[25] It is well-established that when a custody dispute arises between a parent and a non-parent, and where a *de facto* custodianship is not an issue, the non-parent must "prove that the case falls within one of two exceptions to parental entitlement to custody." [26] The first exception arises if a parent is shown to be unfit. The second arises if a parent waives his or her superior right to custody.[27]

■ A determination that a parent is an unfit person to have custody of her children must be supported by clear and

23. Although the question was somewhat disputed, it is now settled that a person must have "been the primary caregiver for the child but also the primary financial supporter of the child in order to prove de facto custodian status." *Swiss v. Cabinet for Families & Children*, 43 S.W.3d 796, 798 (Ky.App.2001).

24. *Williams v. Phelps*, 961 S.W.2d 40, 41 (Ky. App.1998) states as follows:
   In general, in order to support an action, the interest of the party must be a present or substantial interest, as distinguished from a mere expectancy. *Winn v. First Bank of Irvington*, Ky.App., 581 S.W.2d 21, 23 (1978). A party must have a real, direct, present and substantial right in the subject matter of the controversy. *Id.* Standing is the right to appear and seek relief in a particular proceeding. *See Id.*

25. The version of KRS 403.420(4)(b) in effect at the time of the circuit court proceedings

provided that "a child custody proceeding is commenced in the Circuit Court ... [b]y a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one (1) of his parents[.]" This section of the statute was repealed in 2004. The children in this case were found to be in the physical custody of their *de facto* custodian who pursuant to KRS 403.270 have equal standing with the parents.

26. *Moore*, 110 S.W.3d at 359 (citing 16 L. Graham & J. Keller, *Kentucky Practice, Domestic Relations Law* § 21.26 (2d ed. & Supp. 2003)); *see also Davis v. Collinsworth*, 771 S.W.2d 329, 329–30 (Ky.1989).

27. *Moore*, 110 S.W.3d at 359.

convincing evidence.[28] To prove the parent is unfit, the non-parent must demonstrate by clear and convincing evidence that the parent "engaged in conduct similar to activity that could result in the termination of parental rights by the state." [29] The type of evidence necessary to demonstrate a parent to be unfit includes: (1) evidence of inflicting or allowing to be inflicted physical injury, emotional harm or sexual abuse; (2) moral delinquency; (3) abandonment; (4) emotional or mental illness; and, (5) failure, for reasons other than poverty alone, to provide essential care for the children.[30]

It is undisputed that both Krystal and Kevin were unable to take care of the children at the time the hearing was held. The trial court in its findings stated:

> The Court finds that Krystal Van Cleave and Kevin Hightower voluntarily relinquished custody of their children to Ed and Judy Allen in April 2002 and the children have been continuously in their custody since that time. Krystal and Kevin have failed, for reasons other than poverty alone, to provide the necessary food, shelter or clothing and other necessities of life for these two children for a continuous period of more than a year. By their actions they have relinquished their superior claim to custody.

Once the trial court found Krystal and Kevin to be unfit, it should have also made a determination as to the fitness of the Allens. If the Allens had been determined to be fit and not to have relinquished their superior right to custody, then they should have been awarded custody of Austin and Shayann. Instead, the trial court then found that it was not in the best interests of the children to be in the custody of the Allens for the following reasons:

> The Allens have generally attempted to act in the children's best interest and to rescue them from an unfortunate situation. They have naturally become very attached to the children and the children to them. This attachment may have affected their judgment and objectivity in their dealings with Krystal and her father. They are in all respects capable of providing a stable home. Nevertheless it is found that it is not in the children's best interest to grant the Allens permanent custody. The lack of any blood relationship and their age (they will be approaching age 70 when Shayann is 15 years old) are both factors in this decision. The possibility that they could later choose to move elsewhere resulting in separation of the 3 siblings and the possibility that sometime in the indefinite future that they might voluntarily relinquish custody back to Krystal has also been considered. The likelihood of either of these events happening seems lower if custody was placed with the Devines. For these reasons it is in the best interest of the children that the Allens be eliminated from consideration as permanent custodians.

However, the trial court failed to make a finding regarding whether the Allens had given up their superior rights as *de facto* custodians or whether they were unfit to care for the children.[31] This right of the *de facto* custodian is just as important as that of the parents. KRS 403.270(1)(b) states, "[o]nce a court determines that a person meets the definition of de facto

---

**28.** *Davis*, 771 S.W.2d at 330.

**29.** *Moore*, 110 S.W.3d at 360.

**30.** *See Davis*, 771 S.W.2d at 330.

**31.** *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky.2004). *See also James v. James*, 457 S.W.2d 261, 263 (Ky.1970); *Diaz v. Morales*, 51 S.W.3d 451, 454–55 (Ky.App.2001).

custodian, the court shall give the person the same standing in custody matters that is given to each parent...." The trial court plainly stated that the purpose of its September 8, 2003, order was to eliminate the Allens from consideration for custody. The reasons given by the trial court concerned factors not enumerated in KRS 403.270(2) and involved issues that would not affect the Allens' relationship with the children, which was a clear abuse of KRS 403.270(3).

Thus, the trial court's finding that the Allens were the *de facto* custodians of the children was supported by substantial evidence, and we are compelled to uphold this finding. Therefore, with that being established, we must vacate the order of September 8, 2003, and remand this matter to the Logan Circuit Court for it to apply the law of KRS 403.270 and to make its custody determination in accordance with the law as discussed herein. On remand, the trial court will need to determine whether the Allens are unfit or whether they relinquished their superior right to custody. If neither of these applies, then the Allens must be awarded custody of Austin or Shayann since Krystal and Kevin were found to have relinquished their superior right to custody in the orders entered on September 8, 2003, and February 17, 2004, and they did not appeal those orders.

ALL CONCUR.