**Troy HUDSON, Appellant**

**v.**

**Ashley COLE, Appellee**

**NO. 2014–CA–001271–ME**

Court of Appeals of Kentucky.

RENDERED: MAY 15, 2015; 10:00 A.M.

Brief for Appellant: M. Erin Wilkins, Newport, Kentucky

Brief for Appellee: Michael A. Hummel, Covington, Kentucky

BEFORE: J. LAMBERT, STUMBO, AND TAYLOR, JUDGES.

## OPINION

### J. LAMBERT, JUDGE:

Troy Hudson appeals from the Campbell Family Court's custody and visitation order entered on July 3, 2014. After careful review, we affirm.

The parties in this action were never married, but have one child together, a son, J.C., who is now two years old. Ashley and Troy met while attending Western Michigan University in Kalamazoo, Michigan, and conceived the child shortly after Troy had graduated and while Ashley was in her last year of school. In the last month of her pregnancy, Ashley moved back to Ft. Thomas, Kentucky, to live with her parents. She gave birth to J.C. in January 2013.

Troy was involved in J.C.'s prenatal care and was present for his birth. The parties had discussed parenting the child together while living in Michigan; however the parties have never been in a romantic relationship. According to Troy, Ashley's move to Kentucky was a surprise. Troy feels it is important that he be involved in the child's life in a significant way.

Currently, Troy continues to reside in Michigan, while Ashley continues to live in Ft. Thomas, Kentucky. Troy has been employed with various Republican political campaigns in Michigan since graduating. In his current position he works for a Republican House of Representatives' campaign, a position he obtained through a professional contact he made from the last campaign on which he worked. Troy testified that it would be very hard for him to find similar employment in Kentucky because he has never worked for the Republican Party here and does not have any political connections within the state. Ashley stipulated at trial that Troy would not be able to find similar work in the Northern Kentucky or Cincinnati areas.

On March 19, 2013, approximately two months after J.C. was born, Troy filed a petition for custody in the Campbell Family Court and asked for temporary orders regarding custody and parenting time. The parties were able to agree on a temporary parenting time schedule for J.C., entered May 8, 2013, wherein Troy would travel to the Northern Kentucky area at least once a month to have parenting time with the child from Saturday to Sunday. Troy testified that he normally stayed in a hotel and that his parents and brother would sometimes travel with him. He also testified that during these short visits, Ashley would sometimes not send enough breast milk for the child and that sometimes this interrupted his parenting time with J.C.

The parties mediated the matter unsuccessfully. Ashley requested a parenting time/custody assessment. Over Troy's objection, the family court appointed Dr. Jean Deters to conduct an assessment and issue a recommendation on parenting time for the child because the parents live approximately five hours apart. The parties began meeting with Dr. Deters for interviews, observation with the child, and testing over a period of several months. The main point of contention was that Ashley did not want the child to travel to Michigan for parenting time, and Troy wanted

more, longer periods of parenting time with J.C. in Michigan. Both parties testified that the other party was a good and fit parent.

Troy continued to request ·additional parenting time with J.C. at his home in Michigan. At a hearing on December 9, 2013, the family court granted holiday parenting time to Troy at his home in Kalamazoo, Michigan, for a period of four days. Immediately after the hearing, Troy and Ashley agreed to modify the court ordered parenting time for the holiday period. Ashley was still breast feeding, and the parties agreed that Ashley would bring J.C. to Michigan so she could stay in the area while Troy had parenting time with the child. This would allow her to provide J.C. with additional breast milk. Troy's parenting time ended early when Ashley had to return to work, and at this time Troy voluntarily agreed to shorten his parenting time in order to accommodate Ashley's schedule and to ensure that J.C. had breast milk. Ashley testified that as of July 2014, she was no longer breast feeding J.C.

Before the final hearing in this matter, the parties entered into an agreed order regarding child support and payment of uncovered medical expenses. Troy has regularly been paying $420.00 per month to Ashley for child support. The parties agreed on all other issues except parenting time.

In February 2014, Dr. Deters issued a "Parenting Time Assessment" report. Dr. Deters compiled the forty-page report after approximately two sessions with each party. Dr. Deters' report included a suggested schedule of parenting time for the child based on Troy's ability to travel to Kentucky one weekend per month and included different scenarios for when the child is in school, is in out-of-home daycare, or in home daycare. Currently, J.C.'s maternal grandmother is watching J.C. while Ashley works during the day.

Among other things, the assessment recommends that Troy should not have any overnight parenting time at J.C.'s current age. It also recommends no overnight parenting time until J.C. is between thirty to forty-two months old. The assessment also concludes that J.C. should not travel to Michigan with the exception of some significant life event until Troy exercises week long vacation parenting time, which is not recommended until J.C. is 5½ years old. Full weekends with Troy are not recommended until J.C. is 7½ years old. Troy argues that these recommendations are inconsistent with his fundamental right and sincere desire to pursue a personal and significant relationship with his son.

The family court held a hearing on the contested issues on May 30, 2014, and issued its order on July 3, 2014. Both parties testified and submitted proposed findings of fact and conclusions of law. Troy submitted an entire custody order as an exhibit to his proposed findings and testified as to the contents of his proposal. He requested extended time in Michigan with J.C. before he begins school and the majority of the summer with J.C. in Michigan after J.C. begins Kindergarten, with weekends and breaks in Michigan during the rest of the year. Troy testified that his work schedule could be somewhat erratic and that it is difficult for him to get to Kentucky more than one weekend a month at this time. Working for the political campaign in Michigan involves evening and weekend work at times. Troy would have more flexibility in his work schedule and a better quality of parenting time with J.C. if the child could travel to Michigan. J.C.'s paternal grandmother is able to provide free daycare for the child during the time Troy works.

Ashley testified at the hearing that J.C. has a very difficult time dealing with confinement in a car seat, and it is extremely hard for him to deal with anything more than a quick ride to the grocery store. Ashley described how difficult the car ride up to Michigan for Christmas was for J.C., and stated that a trip that usually takes five hours took eight because she had to stop numerous times to calm J.C. Ashley described the trip home as being even worse for J.C. and stated that she had never seen J.C. so upset. J.C. screamed and flailed when she went to put him in the car seat and cried for almost the entire ride home. Ashley testified that the only time J.C. did not cry was for the short time he fell asleep from wearing himself out from crying. She described that after this trip to Michigan, J.C. did not talk (meaning make any baby noises) for several days afterward and that when she would put him near the car seat, he became upset.

The family court adopted Dr. Deters' assessment in full as the order of the court regarding parenting time and found that schedule to be in J.C.'s best interest. Dr. Deters did not testify at trial, as the court had previously ordered that her report was to be considered in lieu of live testimony. Dr. Deters' report utilized the best interest of the child standard when determining appropriate parenting time.

Troy now appeals from the family court's July 3, 2014 order, arguing that the court used the incorrect standard when adopting the report's "best interest" standard to determine his parenting time. Troy argues that by adopting the recommendations of Dr. Deters, the family court failed to grant the appropriate amount of parenting time to him and unreasonably restricted his parenting time schedule. Troy contends that the family court should have looked to Kentucky Revised Statutes

(KRS) 403.320(1), which states that a parent should be granted "reasonable" visitation unless such visitation would "endanger seriously" the child's physical, mental, moral, or emotional health. Troy argues that there was no evidence presented at trial that shows that reasonable parenting time would seriously endanger the child.

An appellate court will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion or were clearly erroneous in light of the facts and circumstances of the case. *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky.App.2000). Whether the proper law was applied to the facts is reviewed *de novo*. *Allen v. Devine*, 178 S.W.3d 517, 524 (Ky.App.2005). The test is not whether we would have decided the issue differently, but whether the findings of the trial court were clearly erroneous or an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

On appeal, Troy argues that the family court did not grant him reasonable parenting time with J.C. under Kentucky statutory and common law. Troy also argues that the court used the wrong standard to determine his parenting time and made no findings of fact or conclusions of law that parenting time with the father would seriously endanger the child.

Troy contends that the family court should have applied the guidelines of KRS 403.320(1), which provides that

[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger

seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the developmental age of the child.

Troy argues that although he was granted legal joint custody of the child, he was not the "custodial" parent because J.C. is residing primarily with Ashley, and therefore Troy contends that this statute applies when determining his parenting time.

Ashley argues that because Troy was granted joint custody, the standard applied by the trial court in evaluating J.C.'s best interest was appropriate. In support of this, Ashley argues that the portion of KRS 403.320(1) dealing with endangerment to the child only applies if a parent is denied visitation, which she argues is not the issue in the case at bar, since Troy was granted parenting time one weekend per month. Ashley argues that since Troy was not denied custody or visitation, the standard is not what would endanger the child's physical, mental, moral or emotional health, but instead is what is in the child's best interest.

■ To a certain extent, we agree with Ashley. The family court in the instant case ordered that Ashley and Troy were to have joint custody of J.C., with Ashley being the primary residential parent. A joint custody award envisions shared decision-making and extensive parental involvement in the child's upbringing, as in general serves the child's best interest. *Squires v. Squires*, 854 S.W.2d 765, 769 (Ky.1993). With joint custody, a visitation schedule should be crafted to allow both parents as much involvement in their children's lives as is possible under the circumstances. *Aton v. Aton*, 911 S.W.2d 612 (Ky.App.1995).

■ While this Court may question a joint custody arrangement with parents living five hours apart and in different states, the fact of the matter is that neither Ashley nor Troy have raised the issue of custody, and instead the only issue before this court is the amount of parenting time granted to Troy. In *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky.App.2000), this Court applied the reasonable visitation standard set forth in KRS 403.320(1) to evaluate timesharing orders in shared custody cases. Reasonable visitation is decided based upon the circumstances of each parent and child, with the best interests of the child in mind. *Id.* at 524–25. The trial court has considerable discretion in determining which living arrangements will best serve the interests of the child. *Id.* at 525.

In the instant case, a review of the record indicates that the family court had evidence before it regarding the parents' living and employment situations, as well as Dr. Deters' evaluation and recommendations. While we certainly sympathize with Troy and the limited time he has with his son, the fact of the matter is that J.C. is two years old and simply does not understand the nature of traveling long distances to see a parent. We agree with the evaluation by Dr. Deters that significant time away from Ashley, J.C.'s primary caretaker since birth, would negatively affect him. While we certainly agree that time spent with Troy would benefit J.C., we must be cognizant that children develop attachments over time and that an attachment to the mother is also important. Certainly if Troy were able to spend more weekends in Kentucky, or even relocate here, he would most definitely be granted more time with his son, as J.C. would form an attachment to him and would be able to spend longer periods of time away from Ashley. Under these circumstances, we cannot say that the trial court did not look

at J.C.'s best interests in crafting a visitation schedule that would allow both parents to spend as much time with J.C. as possible. Should Troy's employment change and his schedule permit more visitation, we urge him to seek out that parenting time with J.C.

We disagree with Troy's argument that the family court unreasonably restricted his visitation. In fact, the circumstances of the parties' living situations are what restrict visitation in this case. KRS 403.320(3) is the only subsection of the statute that discusses restricting a parent's visitation rights. That states, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." As Troy points out, this case can be distinguished from *Kulas v. Kulas*, 898 S.W.2d 529 (Ky.App.1995), because there was no modification of an existing order granting or denying visitation here.

We also agree with Ashley that the family court was not required to make findings of fact or conclusions of law that parenting time with Troy would seriously endanger J.C., because the court did not deny Troy visitation with him. Instead, the court instructed the parties to follow Dr. Deters' recommendations unless they could mutually agree on another schedule. As there was no denial of visitation, the family court was not required to make findings of fact or conclusions of law that visitation with Troy would seriously endanger J.C.'s physical, mental, moral, or emotional health. We find the family court's order to be in J.C.'s best interests, and therefore it is not an abuse of the discretion afforded to family courts in this context.

Accordingly, finding no error, we affirm the July 3, 2014, order of the Campbell Family Court.

ALL CONCUR.