RENDERED:  OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1647-MR


FRANCES J. ROBLES                                                    APPELLANT


                  APPEAL FROM SHELBY CIRCUIT COURT
v.                HONORABLE S. MARIE HELLARD, JUDGE
                  ACTION NO. 18-CI-00173


GARRY W. SIMMS                                                        APPELLEE


                                OPINION
                               AFFIRMING

                          ** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  Frances J. Robles ("Frances"), the mother of A.R.

("Child"), appeals the Shelby Circuit Court's grant of sole custody to Child's

father, Garry Simms ("Garry").  Upon careful review of the record and applicable

law, we affirm.

# BACKGROUND

Child was born to Frances and Garry in June of 2017. The parties never married and, prior to the immediate custody action, they had no formal custody or timesharing arrangement. Child resided primarily with Frances, with Garry seeing Child as agreed upon by the parties.

The current custody and timesharing arrangement came about because of an incident which took place in January of 2018 when Child was approximately seven months old. Specifically, Frances presented Child for emergency care with significant amounts of bruising around Child's feet and ankles. Upon further examination, hospital staff discovered that Child had suffered a spiral fracture to her right tibia and buckle fractures to her left tibia and fibula, directly above her ankles. Frances told the health care workers that the only thing she knew of that could have caused the injuries was that her other child, the three-year-old half-sister of Child, had jumped on Child. Frances further told the health care workers that no one else had been present in the home in the time period during which the injuries most likely occurred.

As a result of the injury, the Cabinet for Health and Family Services, Department for Community Based Services (the "Cabinet") removed Child from Frances's custody and placed her in Garry's custody. Frances was granted supervised visitation. Additionally, the Cabinet initiated a dependency, neglect,

and abuse ("DNA") action against Frances, with Frances continuing to maintain throughout the initial phases of the DNA action that she had been alone with the two children on the night in question. Moreover, Garry filed a custody action on April 6, 2018, requesting sole custody of Child.

Although we do not have a full record of what transpired in the DNA action, the record indicates that the trial court held an adjudication hearing on January 31, 2019. At such hearing, certain facts were presented to the trial court that Frances's boyfriend was present at her house on the night prior to the night that Child's injuries were discovered. While Frances claimed that she did not reveal the fact that her boyfriend was present because she and Garry had an agreement to not bring significant others around Child, Frances ultimately stipulated at the adjudication hearing to risk of harm regarding both Child and Child's sibling and stipulated to physical abuse of Child.

At the disposition hearing in the DNA case, the Cabinet reported that it was still unknown exactly what or who caused Child's injuries. Furthermore, the Cabinet did confirm that Frances had completed a case plan with the Cabinet while awaiting disposition of the DNA allegations. Specifically, Frances completed parenting courses and participated and complied with supervised timesharing during the pendency of the DNA action. In addition, Frances completed a mental health assessment requested by the Cabinet – which indicated no mental health

issues – and had ended her relationship with her boyfriend, Bradley King.

However, the disposition report dated February 20, 2019 noted that Frances only

ended her relationship with Bradley after the adjudication hearing and the court's

discovery that Bradley was present at the home during the time period of Child's

injuries. Specifically, the disposition report indicated:

> [Frances] stated that she ended [her relationship with
> Bradley] because her attorney advised her to. Despite
> [Frances] completing case planned tasks, concerns
> remain that she has not accepted responsibility for
> [Child's] severe injuries, nor provided an explanation for
> them in over a year. Additionally, [Frances] has
> continued to maintain a relationship with [Bradley] and
> protect him and/or his role in [Child's] injuries.

The trial court thereafter held a hearing on Garry's motion for sole

custody on October 3, 2019. At this hearing, Frances requested that she be granted

joint custody with equal timesharing of Child based on the Cabinet's determination

that the perpetrator of Child's leg injuries was still unknown, as well as the fact

that Frances had fully completed her case plan during the pendency of the DNA

action. Furthermore, with Garry's permission, Frances had exercised consistent

unsupervised timesharing with Child, including overnight visits, during the

pendency of the DNA matter with no issues. Frances did testify at the hearing that

her boyfriend was present the night before Child's injuries were discovered and

further admitted that she had argued with her boyfriend on the evening before the

discovery of Child's injuries.

Garry testified at the custody hearing that he intended to continue Frances's involvement in major life decisions concerning Child. Garry further testified that his request for continued sole custody of Child was based on the fact that he still did not know what had happened to cause Child's injuries and that he had continued concerns regarding Frances's significant other.

The trial court entered an order on October 3, 2019, the same day upon which the hearing occurred, ordering that Garry would retain sole custody. Moreover, the trial court required Frances's timesharing with Child to be supervised. Specifically, the trial court found that:

> [Child] was injured severely during [Frances's] time with [Child], without explanation. The Court only learns of events of the night in question when [Frances] is called to testify . . . [Frances] is not candid with anyone about the events that surround [Child's] abuse, and therefore, the Court concludes that unsupervised visitation with [Frances] poses a significant risk of harm to [Child].

Frances timely appealed the trial court's order as a matter of right.

## ANALYSIS

### a. Standard of Review

It is well-settled that an appellate court may set aside a lower court's findings "only if those findings are clearly erroneous." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). A finding is not clearly erroneous if it is supported by substantial evidence. *Id.* "Substantial evidence" has been

defined by Kentucky courts as "evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id*. (citation and internal quotation marks omitted). Moreover:

> [r]egardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, mere doubt as to the correctness of a finding will not justify its reversal, and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id*. (citations, internal quotation marks, and brackets omitted).

Additionally, trial courts are granted significant discretion overall in determining the best interests of a child when making a custody determination. *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983). Consequently, custody determinations will not be disturbed in the absence of an abuse of such discretion. *Allen v. Devine*, 178 S.W.3d 517, 524 (Ky. App. 2005). An abuse of discretion occurs when a court's judgment is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted). With the foregoing standards in mind, we turn to Frances's various assignments of error.

**b. Discussion**

Frances contends that the evidence upon which the trial court based its decision to award sole custody of Child to Garry did not constitute substantial evidence, and that the trial court's decision failed to take all the evidence into account. Frances further argues that the trial court abused its discretion in deciding the best interest of Child since its decision was based upon flawed factual findings.

When determining an award of child custody, Kentucky Revised Statutes (KRS) 403.270(2) instructs the court to give equal consideration to both parents and to award custody in accordance with the best interests of the child. In so doing, the court shall "consider all relevant factors" and shall specifically consider:

(a) The wishes of the child's parent or parents, . . . as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720.

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

. . .

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent . . . , except that the court shall not consider this likelihood if there is a finding that the other parent . . . engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

In this case, the trial court properly recited the evidence it relied upon in making its findings of fact, analyzed the factors set forth in KRS 403.270(2), and determined under the totality of the circumstances that they weighed in favor of awarding Garry sole custody. With regard to Child's interaction and interrelationship with Frances, the court based its conclusions of law on the testimony of both Frances and Garry, as well as other information contained in the record, stating:

[Child's] interaction and interrelationship with [Frances] is troubling due to the fact that [Child] suffered abuse while in the care of [Frances], and [Frances] continues to have *no* explanation whatsoever for [Child's] broken

-8-

> legs. It is unfathomable to this Court that [Child] suffered such severe injuries and [Frances] did not know how or when it occurred. [Frances] apparently expects the Court to believe that the injuries occurred while in the sitter's care. However, it does not seem plausible that injuries so severe would not have been discovered by [Frances] for more than 24 hours after she picked [Child] up from the sitter. While the Court believes that [Frances] loves [Child], the Court concludes that [Frances's] protective capacity of [Child] is frighteningly diminished.

Further, the court based its conclusions that Garry was motivated in seeking sole custody based on his overall concern for Child's welfare and Frances's lack of protectiveness on Garry's testimony at the hearing. We cannot conclude that the findings made by the trial court were clearly erroneous, as the testimony of both Garry and Frances presented at the custody hearing constituted substantial evidence to support the trial court's findings.

Indeed, while Frances argues that she provided evidence sufficient to support a decision to grant her joint custody of Child, where there is conflicting evidence, it is the role of the fact-finder to identify and resolve such conflicts, as well as matters affecting the credibility of the witnesses. *Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky. 1998). The finder of fact may believe any part or all of the testimony of any of the witnesses or may disbelieve all of it. *Gillispie v. Commonwealth*, 212 Ky. 472, 279 S.W. 671, 672 (1926). Therefore, it is simply not enough for Frances to argue that the evidence could have supported the

outcome she desired. The court's findings were supported by the evidence of record and we are unable to say the trial court's decision was arbitrary, capricious, unreasonable, or unfair under the circumstances.

Frances next argues that the trial court erred in requiring her timesharing with Child to be supervised. "[T]his Court will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000) (citation omitted).

KRS 403.320(1) provides that "[a] parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(6) is entitled to *reasonable visitation rights* unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health." (Emphasis added). "Reasonable visitation is decided based upon the circumstances of each parent and child, with the best interests of the child in mind. The trial court has considerable discretion in determining which living arrangements will best serve the interests of the child." *Hudson v. Cole*, 463 S.W.3d 346, 351 (Ky. App. 2015) (citations omitted).

Here, the trial court considered the testimony of the witnesses and concluded that supervised visitation was necessary because Frances did not appear

to be revealing to the court the entire truth about how Child sustained such serious injuries. The mandated supervised visitation was a reasonable outcome designed to protect Child's welfare, and, under these circumstances, we cannot say that the trial court did not look at Child's best interests in requiring supervised visitation with Frances.

Moreover, as there was no denial of visitation, the trial court was not required to make findings of fact or conclusions of law that visitation with Frances would seriously endanger Child's physical, mental, moral, or emotional health. We find the trial court's order to be in Child's best interests, and therefore it is not an abuse of the discretion afforded to circuit courts in this context.

## **CONCLUSION**

Based on the foregoing, we affirm the Shelby Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Whitney True Lawson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Richard J. Head
Louisville, Kentucky