RENDERED:  JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-1015-MR

PERRY DEARFIELD, INTERVENING
PETITIONER; AND MARQUETTA
DEARFIELD, INTERVENING
PETITIONER                                                    APPELLANTS


v.          APPEAL FROM CARTER CIRCUIT COURT
            FAMILY COURT DIVISION
            HONORABLE JENIFFER B. NEICE, JUDGE
            ACTION NO. 16-CI-00101


MIKQUAN JOHNSON,
INTERVENING RESPONDENT;
WHITNEY DEARFIELD,
INTERVENING RESPONDENT; AND
COMMONWEALTH OF KENTUCKY,
EX REL, MIKQUAN JOHNSON                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND McNEILL, JUDGES.

EASTON, JUDGE:  The Appellants, Marquetta and Perry Dearfield ("Grandparents"), appeal from the Carter Family Court's order, which granted joint custody to Appellee, Mikquan Johnson ("Father"), and awarded him primary physical possession of his son ("Child").  Grandparents had previously been named *de facto* custodians and had primary possession of Child.  Grandparents argue the family court erred by modifying the custody order, by awarding physical custody of Child to Father, and by failing to establish reasonable timesharing.  Having reviewed the record and the applicable law, we affirm the order of the Carter Family Court.

## FACTUAL AND PROCEDURAL HISTORY

Child was born in August 2012 to Father and Whitney Hayes (then Whitney Dearfield) ("Mother").  Father was a college student at this time.  Grandparents are Mother's parents.  After the birth of Child, Grandparents assumed the role of primary caregivers of Child.  Mother and Child lived with Grandparents for the first few years of Child's life.  Father was mostly uninvolved in Child's life during these early years.  He moved out of Kentucky shortly after Child was born.

In March 2016, Father filed a petition for custody, asking the family court to grant him joint custody and timesharing with Child.  In this action, Father named only Mother as a Respondent.  In April, Mother filed a motion for child

support. In May 2016, a temporary order was entered, in which Mother was granted sole custody, with Father to receive every other weekend visitation, for four hours on Saturday and Sunday, to be supervised by Grandparents. Father was also ordered to pay child support. In April 2017, a final order memorializing this arrangement was entered.

In early 2018, Father filed a motion for change in custody, as Mother and her husband were incarcerated. Father believed Child to be living with Grandparents at this time. In March 2018, Grandparents intervened in the custody action, and they asserted they were *de facto* custodians of Child. In July 2018, the family court issued an order naming Grandparents *de facto* custodians. This order also granted joint custody of Child to Mother and Grandparents. Father was to have visitation with Child.

Father filed a motion to modify in July 2021. In said motion, he requested additional visitation with Child, to increase gradually. Over approximately the next year, Father was granted increased periods of visitation. After a hearing in August 2022, the family court ordered that Father would receive visitation for all of spring and fall break, half of summer break, every other Christmas break, and every other Thanksgiving break.

In January 2023, Father again filed a motion to modify custody of Child. He requested to be named as a joint custodian of Child. He also later filed

a motion to modify primary possession of Child, after a DNA[1] petition had been filed against Mother. A temporary removal hearing was held in the juvenile action[2] in March 2023. At this hearing, custody of Child was removed from Mother, and joint custody was granted to Father and Grandparents. During the hearing, the family court interviewed Child in chambers. The family court did not remove physical custody from Grandparents at this time.

A hearing on Father's motions was held in April 2023. Father and Grandmother testified. Mother did not appear at this hearing. Father testified his relationship with Child was "great," and he wanted to have primary custody of Child. He testified Child has a loving relationship with Father's family members. Father spoke of his attempts and efforts to maintain a relationship with Child, despite the Grandparents making it difficult to do so. Father stated he is employed, he served in the military, he has never had any criminal or drug history, and he has been putting forth every effort to maintain his relationship with Child. Father was currently residing in Miami, Florida, although he intended to move to Virginia to be closer to his family if he were granted primary possession of Child. This is also a much closer distance to Grandparents.

---

[1] An acronym for Dependency, Neglect, and Abuse.

[2] The only part of the juvenile record provided for our review was the temporary removal hearing that took place on March 2, 2023. We were not provided with the DNA petition or any orders from that action.

Father believes it is not in Child's best interest to remain with Grandparents, nor does he believe Mother should have any custodial interest. He alleged Mother is abusing drugs, and he was concerned that Grandparents were allowing Mother to come to Grandparents' home and be around Child. He believes Mother bullies Grandparents into allowing her to come around, even when she is under the influence. Father further testified that Child's grades in school had suffered.

Grandmother testified next. She stated there were three adults and four children living in the home. In addition to Grandparents and Child, her father (who was at that time bedridden) and Child's three younger half siblings resided with them. Grandmother acknowledged that Mother had been in the home. She further conceded that there were times they believed her to be under the influence; on those occasions, Grandparents asked her to leave. She spoke of one instance where Grandfather had to threaten to call the police to get her to leave. Grandmother also admitted they were not always able to tell when Mother was under the influence.

Grandmother admitted they have not always stood up to Mother, but she insists they have always protected Child. She also conceded Child's grades had declined. She believed it was because the math had gotten more difficult this

year, and that Child was lazy and did not want to show his work when completing assignments.

Grandmother believes she and Grandfather have been the only stable influences in Child's life. She stated his parents went about their own lives and disregarded Child for years. She stated Grandparents were the only ones to put Child's interests first. She testified they were the ones who have raised Child. When Child was born, Child and Mother lived with Grandparents, and Child has had the same bedroom since he came home from the hospital after birth.

The family court issued an order on May 17, 2023. This order granted joint custody to Father and Grandmother.[3] It further granted primary possession of Child to Father, beginning June 1, 2023, as the family court wanted Child to finish the current school year. Grandparents were to receive timesharing throughout July 2023. Beginning with summer break 2024, Grandparents were to have timesharing from June 1 through July 15, as well as spring and fall break. They were also to have visits with Child any weekend they were willing to travel to where Father lives.

---

[3] Although Grandparents mention the exclusion of Grandfather from the joint custody determination in their brief, this unexplained change was not specifically an issue raised for the appeal. Grandfather did not testify at the latest hearings at which the change of custody was addressed. We will not speculate on the reason for this change, noting only that we have considered the position of both Grandparents and do not find any abuse of discretion in limiting joint custody to Grandmother and Father in the circumstances presented in this case, which may benefit from communication between two designated persons.

Grandparents filed a motion to Alter, Amend, or Vacate. At a hearing in May 2023, the family court appointed a Friend of the Court ("FOC"). It also amended the previous order in that Father would have timesharing with Child from June 1 to July 19, which was the next scheduled court date.

The FOC filed a report in mid-July 2023. The report outlined some concerns the FOC had about Child remaining with Grandparents, due to Mother living just down the street from Grandparents. Mother will randomly show up at the home while under the influence and demand money from Grandparents. Child also reported other concerning behavior to the FOC. The FOC reported Child does not want to change schools, and he misses his Grandparents when he is with Father. However, Child did state he wanted to spend more time with Father. The FOC ultimately could not recommend that Child remain with Grandparents due to the situation with Mother.

A final hearing was held on July 19, 2023. The family court interviewed Child in chambers. Child reported that his time with Father had gone "pretty good." He testified to the structure he has at Father's house, what rules he must follow, and what types of activities they do together. Child reported he would rather stay in Kentucky, but he would be "okay with either decision."

Grandmother, Mother, and Father testified at this hearing. Father spoke about Child's growth since he came to live with Father. He testified Child

has "stepped out of his shell." Father stated he and Child have worked on discussing his feelings and thoughts, because Child was accustomed to "holding everything in." They have started counseling together, which Father believes has been beneficial to both.

The family court modified its May order with respect to the 2023 summer break. It ordered Grandparents would have timesharing from the date of the hearing until August 13, 2023. The court ordered its previous order would stand for the remainder of the terms. Grandparents then filed this appeal.

## STANDARD OF REVIEW

Appellate review of custody awards is for abuse of discretion. *Gertler v. Gertler*, 303 S.W.3d 131, 133 (Ky. App. 2010). Abuse of discretion occurs when a ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

We are allowed to set aside the trial court's factual findings only if they are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Findings of fact are clearly erroneous when they are not supported by substantial evidence. *Id.* "[S]ubstantial evidence is [e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id*. (internal quotation marks and

-8-

footnotes omitted). "[M]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal, and appellate courts should not disturb trial court findings that are supported by substantial evidence." *Vinson v. Sorrell*, 136 S.W.3d 465, 470 (Ky. 2004) (internal quotation marks and citations omitted). Due regard must be given when the trial court assesses witness credibility. CR[4] 52.01.

## ANALYSIS

Grandparents raise several issues in this appeal. First, they argue the family court erred as a matter of law in modifying the custody order because it failed to consider KRS[5] 403.340. Next, Grandparents argue the family court abused its discretion in awarding primary possession of Child to Father. Finally, they argue its timesharing award to Grandparents was an abuse of discretion.

KRS 403.340 is the controlling statute regarding modification of custody, and it states:

> (3) . . . [T]he court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

---

[4] Kentucky Rules of Civil Procedure.

[5] Kentucky Revised Statutes.

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

Grandparents first claim that the family court erred because it failed to consider this statute at all. They claim the family court did not base its analysis upon any change of circumstances as required. We disagree.

While the family court's order did not specifically reference KRS 403.340 or its factors, it is clear from reviewing the order that the court did in fact find a change of circumstances in which it believed modification of custody was in Child's best interest. Father sought only a change of timesharing and did not ask for a change of joint custody. But the family court actually changed custody with the removal of the Grandfather as a joint custodian.

The family court made findings of fact that Mother had an addiction that had subjected Child to a risk of harm. There was evidence presented that

-10-

Mother lived very close to Grandparents, and that Mother would regularly show up at Grandparents' home while under the influence. Grandmother admitted in her testimony, which was referenced in the family court's findings, that Mother had bullied Grandparents and that they sometimes had trouble standing up to her. The family court further found that Grandparents were under a lot of stress due to taking care of four of their grandchildren and Grandmother's terminally ill father. The family court also referenced that Child's grades had been suffering recently. These are all changes in Child's and Grandparents' circumstances for the family court to consider. All these factual findings were supported by the evidence presented.

Father argues that Grandparents' allegation of error on this point is unpreserved, as they did not contest the granting of joint custody to Father and Grandparents in the juvenile action. He argues that because of this, the only standard the family court had to apply was the "best interest of the child" standard of KRS 403.270; he claims it did not have to find a change of circumstance under KRS 403.340. Father is correct in that no one challenged the designation of joint custody from the juvenile action, and therefore it was the custody order in place at the time of the final hearing. Regardless, the evidence is sufficient to support the family court's findings and conclusions if KRS 403.340 had applied. KRS 403.270 was also not the proper standard, as this was not an initial custody order.

-11-

This leads us to Grandparents' next argument. They claim it was error for the family court to grant primary possession of Child to Father. They claim there was not substantial evidence to support the conclusion that residing primarily with Father is in Child's best interest. Again, we disagree.

Because this ultimately was a modification of visitation or timesharing, KRS 403.320 applies. "Under KRS 403.270, an initial determination of custody requires consideration of the best interests of the child, with a rebuttable presumption that joint custody and equal parenting time is in the child's best interests. A modification of visitation or timesharing, governed by KRS 403.320, on the other hand, requires that the change be in the best interests of the child, unless the modification is 'less than reasonable,' in which case the physical, mental, moral, or emotional health of the child must be seriously endangered." *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). This statute merely requires the family court to find that modification of timesharing, or in this case, a change in designation of the primary residential custodian, is in the best interest of the child.

Again, while the family court in its order did not explicitly reference the statute, it did make factual findings to support the conclusion that living with Father was in Child's best interest. While not dispositive, it should be noted that the appointed FOC in this case recommended that Child reside with Father. *See*

*Greene v. Boyd*, 603 S.W.3d 231, 235-37 (Ky. 2020). The FOC had major concerns about Mother's proximity to Grandparents and her tendency to come to Grandparents' home under the influence. The FOC reported that Child has witnessed some concerning behavior during these instances. The family court also noted an improvement in the Child's appearance and demeanor after his initial extended visit with Father. We do not believe based on the facts and circumstances of this case that the family court abused its discretion in its ruling. "The question before this Court is not whether we would have reached a different decision, but rather, whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *Berzansky v. Parrish*, 583 S.W.3d 6, 7 (Ky. App. 2019).

Grandparents' final contention of error is that the family court did not grant them reasonable timesharing with Child. Grandparents claim in their brief that "[i]t was an abuse of discretion for the Honorable Trial Court to limit sharing to basically four weeks in the summer."[6]

Grandparents claim that they are only receiving visitation "four weeks in the summer" isn't entirely accurate. The actual substance of the order grants Grandparents June 1 through July 15, beginning with summer break in 2024. They will also receive the entirety of spring break and fall break. Additionally, they may

---

[6] Appellant Brief, page 17.

-13-

visit with Child any weekend in which they travel to where Father and Child reside.

"What constitutes 'reasonable visitation' is a matter which must be decided based upon the circumstances of each parent and the children, rather than any set formula. When the trial court decides to award joint custody, an individualized determination of reasonable visitation is even more important. A joint custody award envisions shared decision-making and extensive parental involvement in the child's upbringing, and in general serves the child's best interest." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000). In this case, Grandparents and Father live in two different states, many hours apart. It is unrealistic that equal timesharing could be possible. With Child being in school, it appears the family court did what it could do to give Grandparents reasonable visitation with Child. *See Hudson v. Cole*, 463 S.W.3d 346 (Ky. App. 2015).

We have sympathy for Grandparents. There is no doubt that Grandparents love Child dearly, and they have cared for him for most of his young life. However, Father has never been found to be unfit, and he has made substantial (if not belatedly commenced) efforts to be a good parent to Child. We cannot say under the facts of this case that the family court abused its discretion.

## CONCLUSION

The family court's findings of fact are supported by the evidence and

-14-

are not clearly erroneous. Because the family court did not abuse its discretion in its award of joint custody and granting Father primary possession, we AFFIRM the order of the Carter Family Court.

ALL CONCUR.

<table>
<tr><td>BRIEFS FOR APPELLANTS:</td><td>BRIEF FOR APPELLEE MIKQUAN JOHNSON:</td></tr>
<tr><td>Robert W. Miller<br>Grayson, Kentucky</td><td>Brandon M. Music<br>Grayson, Kentucky</td></tr>
</table>